IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA

TARINA J. WILEY, )
)
Plaintiff, )
)
v. ) Case No. CIV-08-227-KEW
)
MICHAEL J. ASTRUE, )
Commissioner of Social )
Security Administration, )
)
Defendant. )

## OPINION AND ORDER

Plaintiff Tarina J. Wiley (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Claimant's application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, it is the finding of this Court that the Commissioner's decision should be and is AFFIRMED.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social

Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. §423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See*, 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally*, <u>Williams v. Bowen</u>, 844 F.2d 748, 750-51 (10th Cir. 1988).

2

substantial evidence; and, second, whether the correct legal standards were applied. Hawkins v. Chater, 113 F.3d 1162, 1164 (10th Cir. 1997)(citation omitted). The term "substantial evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. Casias v. Secretary of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951); *see also*, Casias, 933 F.2d at 800-01.

### Claimant's Background

Claimant was born on July 7, 1963 and was 44 years old at the time of the ALJ's decision. She completed her education through the eighth grade. Claimant's engaged in past relevant work as a postal clerk and prison mail censor. Claimant alleges an inability to work beginning October 31, 2003 due to anxiety, depression, lung

problems, fibromyalgia, and carpal tunnel syndrome.

## Procedural History

On June 24, 2005, Claimant protectively filed for disability insurance benefits under Title II (42 U.S.C. § 401, *et seq.*) and supplemental security income benefits pursuant to Title XVI of the Social Security Act (42 U.S.C. § 1381, *et seq.*). Claimant's application for benefits was denied initially and upon reconsideration. On November 15, 2007, Claimant appeared at a hearing before ALJ John Volz in Tulsa, Oklahoma. By decision dated December 6, 2007, the ALJ found Claimant was not disabled at any time through the date of the decision. On April 25, 2008, the Appeals Council denied Claimant's request for review. Thus, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He found that while Claimant was unable to perform her past relevant work, she retained the residual functional capacity ("RFC") to perform a limited range of sedentary work.

## Errors Alleged for Review

Claimant asserts the ALJ committed error requiring reversal in (1) failing to perform a proper step two analysis; (2) failing to

perform a proper evaluation at step three; (3) failing to perform a proper credibility determination; (4) failing to consider all of the opinions of the treating physicians; and (5) failing to perform a proper step five analysis.

## Step Two Analysis

Claimant contends the ALJ failed to properly consider her mental impairments. In his decision, the ALJ found Claimant suffered from the severe impairments of carpal tunnel syndrome, fibromyalgia, and alcohol dependence. (Tr. 16). He concluded Claimant's alleged mental limitations of depression and anxiety do "not cause more than a minimal limitation on claimant's ability to perform basic mental work activities and is therefore non-severe." Id.

Claimant takes issue with the ALJ's discussion of the four broad functional areas or the "paragraph B" criteria. Claimant contends she had at least one episode of decompensation which should have been considered by the ALJ in analyzing the fourth functional area. The ALJ references the December 15, 2004 episode in question, finding Claimant was intoxicated on that date and "made a suicidal gesture." (Tr. 17). The medical records indicate Claimant reported to the emergency room after taking Temazepam pills. (Tr. 159). The emergency room physician diagnosed Claimant

5

with acute suicidal ideation and acute alcohol intoxication. (Tr. 158). Claimant was released and discharged to her home the same night she reported to the emergency room. (Tr. 166).

A claimant bears the burden at step two to present evidence that he has a medically severe impairment or combination of impairments. Bowen v. Yuckert, 482 U.S. 137, 146 & n. 5 (1987). While the showing required is described as "de minimis," the claimant "must show more than the mere presence of a condition or ailment." Hinkle v. Apfel, 132 F.3d 1349, 1352 (10th Cir. 1997) (quotation omitted).

The ALJ's step two task is to determine, based on the record, whether the claimant has a medically severe impairment or combination of impairments. 20 C.F.R. § 404.1520(c). An impairment is "not severe if it does not significantly limit [a claimant's] ability to do basic work activities." 20 C.F.R. § 404.1521(a).

"Episodes of decompensation" is described by the regulations as

> exacerbations or temporary increases in symptoms or signs accompanied by a loss of adaptive functioning, as manifested by difficulties in performing activities of daily living, maintaining social relationships, or maintaining concentration, persistence, or pace. Episodes of decompensation may be demonstrated by an exacerbation in symptoms or signs that would ordinarily require increased treatment or a less stressful situation (or a combination of the two). Episodes of decompensation may

6

be inferred from medical records showing significant alteration in medication; or documentation of the need for a more structured psychological support system (e.g., hospitalizations, placement in a halfway house, or a highly structured and directing household); or other relevant information in the record about the existence, severity, and duration of the episode.

1. The term repeated episodes of decompensation, each of extended duration in these listings means three episodes within 1 year, or an average of once every 4 months, each lasting for at least 2 weeks. If you have experienced more frequent episodes of shorter duration or less frequent episodes of longer duration, we must use judgment to determine if the duration and functional effects of the episodes are of equal severity and may be used to substitute for the listed finding in a determination of equivalence.

20 C.F.R. Pt. 404, Subpt. P, App. 1.

Claimant's single episode of decompensation does not meet the level of severity to satisfy the fourth functional area of the paragraph B criteria. The duration, severity, and nature of the incident in question and its combination with alcohol intoxication together with the fact no further incidents have occurred limits the effect of the incident.

Moreover, the remainder of the medical record does not support a finding of mental impairment. The mental status examination by Dr. Beth Teegarden on August 27, 2005 found Claimant experienced episodes of depression and anxiety which waxed and waned. (Tr. 165). She diagnosed Claimant at Axis I: Alcohol Dependence, Depressive Disorder, NOS - substance induced vs. dysthymia, Anxiety Disorder NOS - substance induced vs. panic disorder and social

7

phobia. Axis II – Deferred. Axis III – Fibromyalgia, Irritable Bowel Syndrome, Carpal Tunnel Syndrome, status post surgery bilaterally, Fungal Pulmonary Infection. Axis IV – Access to Health Care, Financial, Occupational, Social, Primary Support. (Tr. 168). The remainder of the medical record demonstrates only mild limitations with the central component of her difficulties to be alcohol abuse and dependence. (Tr. 182-87, 268-69, 288-93). Based upon the requirements of the regulations and the medical records before the Court, the ALJ's findings with regard to Claimant's mental limitations are not erroneous.

### Step Three Analysis

Claimant merely carries over the fact the ALJ failed to include a mental health limitation in his step three evaluation as a point of error. Since this Court has found no such limitation was necessary, the ALJ's evaluation at step three is not erroneous.

### Credibility Determination

Claimant contends the ALJ failed to engage in a proper credibility evaluation. This Court has reviewed the medical records upon which the ALJ relied and finds no error in his credibility analysis. Again, Claimant raises the fact that the ALJ failed to find a mental impairment - a fact that does not make the credibility finding improper.

The ALJ cited to a number of medical records which

8

contradicted or called into question the level of impairment alleged by Claimant. In particular, Claimant was evaluated by Dr. Adel Malati who found, contrary to Claimant's assertions, Claimant waled with a normal, steady, unassisted gait. (Tr. 191). Additionally, Dr. Malati found Claimant had a full range of motion in all of her joints and had no pain with straight leg raising. (Tr. 191-94).

With regard to any limitations posed by Claimant's carpal tunnel syndrome, the ALJ found Claimant suffered from the condition and that it represented a severe impairment. However, he also found Claimant underwent release surgery in 2002 and that she enjoyed marked improvement in the condition after the surgery. (Tr. 16, 101). Contrary to Claimant's assertions, her condition improved to the point that she was released to return to full and regular duty. Id.

Claimant's assertion that she suffered from debilitating fibromyalgia is also not supported by the medical record. Her level of functioning accurately cited by the ALJ runs contrary to her pain claims. (Tr. 17).

It is well-established that "findings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995). "Credibility determinations are peculiarly in the province of the finder of fact" and, as such, will

not be disturbed when supported by substantial evidence. Id. Factors to be considered in assessing a claimant's credibility include (1) the individual's daily activities; (2) the location, duration, frequency, and intensity of the individual's pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; (6) any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and (7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms. Soc. Sec. R. 96-7p; 1996 WL 374186, 3.

In his decision, the ALJ sufficiently linked the medical evidence to the findings on credibility. In particular, the ALJ identified significant contradictions between the medical findings and Claimant's assertions of impairment. "[A] formalistic factor-by-factor recitation of the evidence" is not required to support the necessary analysis. Qualls v. Apfel, 206 F.3d 1368, 1372 (10th Cir. 2000). The ALJ's discussion and the references to the objective record contained in it, considered in toto, is sufficient to support the credibility findings of the ALJ.

### Treating Physician's Opinion in Relation to GAF

Claimant next contends the ALJ erred by not referencing Claimant's global assessment functioning ("GAF"). Claimant's GAF ranged from 55 to a low of 49. A low GAF is not conclusive on the issue of whether a claimant is unable to perform the necessary functions of employment. "The GAF is a subjective determination based on a scale of 100 to 1 of the clinician's judgment of the individual's overall level of functioning. Langley v. Barnhart, 373 F.3d 1116, 1122 n. 3 (10th Cir. 2004). The Tenth Circuit through a series of unpublished decisions has made it clear that the failure to discuss a GAF alone is insufficient to reverse an ALJ's determination of non-disability. See, Lee v. Barnhart, 2004 WL 2810224, 3 (10th Cir. (Okla.)); Eden v. Barnhart, 2004 WL 2051382, 2 (10th Cir. (Okla.)); Lopez v. Barnhart, 2003 WL 22351956, 2 (10th Cir. (N.M.)). The foundation for this statement is the possibility that the resulting impairment may only relate to the claimant's social rather than occupational sphere. Lee, *supra* at 3. Given that the ALJ discussed the evidence surrounding Claimant's mental functioning, the failure to reference Claimant's GAF scores does not represent reversible error.

### Step Five Analysis

As a final argument, Claimant contends the ALJ engaged in an improper analysis at step five because his hypothetical posed to the

vocational expert at the administrative hearing filed to contain all of Claimant's exertional impairments. An analysis of the questioning of the vocational expert actually represents a more restrictive set of impairments than that from which Claimant was actually found to suffer. Claimant again attempts to bootstrap the failure to find a mental impairment into an error in the questions posed to the vocational expert. This was not error. Upon review of the questions provided to the vocational expert, this Court finds no reversible error.

## Conclusion

The decision of the Commissioner is supported by substantial evidence and the correct legal standards were applied. Therefore, this Court finds the ruling of the Commissioner of Social Security Administration should be and is **AFFIRMED**.

DATED this 28th day of September, 2009.

KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE